oral argument not to exceed 15 minutes per side. Mr. Meyer for the defendant appellant. May it please the court. I'm Kenyon Meyer for Ledinson Chavez and I would reserve three minutes of my time. In Ledinson Chavez's trial, government exhibit 91, which was referred to as the Ledick therapy credentialing documents, was the sole basis for the aggravated identity theft count and the only evidence at trial that connected Ledinson Chavez to billing. of purported medical services to UnitedHealthcare. So I'd like to focus on the three arguments we've made related to the Ledick therapy documents. Those are number one, the court erred by omitting the documents. Number two, the evidence was insufficient to support the aggravated identity theft count. And number three, the aiding and abetting aggravated identity theft instruction was plainly erroneous. The Ledick therapy documents were part of a series of credentialing documents that were introduced at trial through a witness named Hensley. And unlike many cases where a business record certification is used to introduce records, an attempt was made through an investigator for an affiliate of UnitedHealthcare to introduce these documents. And I'd just like to briefly read the question and the answer that described Hensley's understanding of these credentialing documents. The question was, can you tell the jury what credentialing means? Answer, that's a little bit outside of my scope as an investigator. But to my understanding, providers can submit documentation. Some providers, I guess, would submit documentation. I objected because he was guessing. And then he testified providers to be a non-participating provider submit claims and then some submit documentation via fax. And that is important because it is not true and there is no evidence in the record to support that it is a prerequisite to be able to bill to send these credentialing documents in. I'm sorry, so your first argument is an admission argument, but you're not arguing any type of authenticity, right, or chain or anything. You're just saying they shouldn't have been admitted because they're hearsay. I am arguing that both. So what the court did was the court erred. Can I stop you before you say both? Yes. I'm sorry. Did you object on authenticity grounds below? Yes. And I'm sorry, just to follow up, and then I promise. And did you, in your brief, and I'm sorry if I missed it, did you raise that the authenticity is one of the grounds on which you're appealing? And if I missed it, I apologize. I'm not sure if I articulated it that way, but if I could describe the manner this comes in. So obviously the athletic therapy document was a significant document. It was the basis for the aggravated motions pre-trial, during trial, after trial. So there's a big fight over whether the certification was sufficient to, the court ultimately ruled they had to get it in through the witness. Was there a 902.11 certification? There was, but it was an attempt, there was an attempt in one that was insufficient because it basically said we certify everything we've given you. And there was some question as to whether that document actually had ever arrived at UnitedHealthcare. There was a letter in the record where they, UnitedHealthcare initially told the government we don't have credentialing documents for athletic therapy. And the athletic therapy document, unlike every other document in the case, did not have a fax byline from Miami, which is where the billing company was. So, and Mr. Long wouldn't answer your question. No, it's healthy. Big fight over whether, and the government always maintained it could get it in through a business record, as a business, in the ordinary course. So the document ultimately comes in during trial and the court ruled as a business record by limiting her. But you agree that's a hearsay. When you use business record, you're talking about 8036 and not an authentication. And those are two different evidentiary standards. I do, but my understanding is that the rules in that hearsay exception are related to authenticity. For example, you meet the authenticity basis through a business record certification by stating under oath the same issues. I don't know, but something can be authentic and still be hearsay, and something can be non-hearsay and non-authentic. So there are two hurdles the government has to accomplish. So the, my, and I may have an imprecise understanding of authenticity, but the witness said, I don't know. All I know about this document is that when I asked somebody at UnitedHealthcare, they gave it to me. I don't know who sent it. I don't know how it got here. Don't know if it got here. Don't know who signed it. Know nothing. The court felt that, and that's all we had that related to authenticity or to the elements related to the hearsay exception. At some point, I argued that even though, Court, you admitted it under the business record exception, in my view, improperly, I still think you need to instruct the jury that they can't take the signature that purported to be Ladinson Chavez for the truth of the matter asserted, and it's hearsay within hearsay. Why not? The court found it's either a statement of the party opponent or a co-conspirator did it, and they made that finding by a preponderance. Why isn't that sufficient? Because in order to, and this is my long-winded way of getting to the authenticity problem, because if you are going to admit co-conspirator hearsay, there is a requirement that you demonstrate authenticity. And there was no, and in order to do that, you have to meet the inright elements. One of those elements is that the speaker, at the time the statement is made, is a co-conspirator, which requires that that speaker knew that what they were doing was in furtherance of a conspiracy. So, and that's why the government never attempted to get it in through that exception. The government never argued that it was co-conspirator hearsay. The problem was that – But the court made a finding, right? The court said either it's admissible either as a statement of a party opponent, which is an exclusion, or a co-conspirator statement, also an exclusion. Neither are hearsay. The court made, that was the court's ruling with respect to, after the document was in, with respect to the hearsay within hearsay. And that, we believe, was error because the only evidentiary support, there was no evidence of who said it. There was no evidence of if the person who sent the document – Are you talking about the evidentiary ruling itself or the finding? Well, I believe that the evidentiary ruling to admit it in the first place was error as a business record. And then I also believe that the finding that the statement was made by a co-conspirator potentially was clearly erroneous because it lacked, there was no evidentiary basis to support the element that requires a finding with respect to the speaker. And the co-conspirator hearsay rule also requires evidence beyond the document itself with respect to the elements. Well, just with respect to whether a conspiracy exists. I think it's broader than that. The element is the existence of the conspiracy or participation in it. The existence is sufficient. That's why the or exists. No, I think that that language is the statement must be considered but does not by itself establish either of those two things. So I think that – But the statement doesn't establish the conspiracy. We know that. I'm not arguing that there was not evidence of a conspiracy. So what I'm arguing is that the document – it's nothing other than the document. And frankly, the document supports the fact that the speaker participated in the conspiracy because there is no evidence about who the speaker was. So related to that, and so back to the original question which I've probably not answered, which is whether this is an authenticity or a – in my mind as a trial lawyer, when it comes to business records, these are always very close issues and overlapping issues and they don't because the same elements are being utilized. But whatever we want to call it, the guy they got it in through knew nothing about it and did not – the court never ruled on the element which is E in that exception, which is whether I, as the objector, can establish that the source of that document was unreliable. In these documents, all of these credentialing documents, and frankly, most of the documents throughout trial, the mastermind of this scheme, who's a guy named Oscar Lascano, frequently used other people's identities and information with respect to bank accounts, Secretary of State records, without their knowledge. And the source of this document was, I don't think anybody would dispute, unreliable. With respect to the other two issues, the adequacy of the evidence, I think it's important to point out that there had to be proof beyond a reasonable doubt that Lendon Sinchavez knew that the document was sent and there was no evidence that the document was even sent, regardless of whether or not he knew it. But there had to be evidence that he knew the document was sent and there had to be evidence that the chiropractor, Todd Black, had not authorized his ID to be used. And factually, Todd Black testified he had authorized it to be used. But he said not in this case. Correct, but what he said, and remember, when this document was created in August, Todd Black's still working. Right, but the jury could accept that. But all Todd Black said was, question, did you authorize the use of your ID? Not for that. But what the proof was, is he gives his ID to a guy named Sergio Betancourt, says I never thought twice about it. Sergio, it's used, he had no problem with that, he knew why he was giving it to him. He didn't have any, it wasn't particular to any clinic. And then it's used again. And the evidence was he never talked to Chavez, Chavez didn't know English, he knew who Chavez was by his nickname and he saw him work in construction. Zero evidence about Chavez knowing about this ID. And aside from all that, even if you know the person, even if there was proof that someone knew an ID was used, the doctor's still there, it's used again, and Black never said I rescinded my authorization. So I think that there was a dearth of evidence, really, of any knowledge related to Chavez. Your light's been on for a while. I'm sorry, Your Honor. Can I ask about the Diaz, what is it, notebook? Yes, Your Honor. And you say that's hearsay? Yes. And my question is, if we assume that it contains statements of some sort, how do you argue that they were being used to prove the truth of what they asserted? The notebook was created by, allegedly by a co-defendant named Uri Diaz at a time when the undisputed proof was that Uri Diaz did not know about the false billing. The statements in there, according to the witnesses that the government put on, stated that money was being paid to patients to come to the clinics. How do you read those statements? Just because they were said to say that by witnesses? Correct. So the government introduced Nobody actually reading that stuff would see that it says that. No, but what It was admitted as a foundation for the witness to say that it said something, the truth of which is what the government is trying to establish. Correct. And what they did was it was introduced and then they would have witnesses, Orlando Rodriguez, confidential informant, they'd show the document to you. What does this mean? What do you understand that to mean? What do you understand that to mean? the government says and relies on the notebook, which it claims corroborates the testimony from Orlando Rodriguez that patients were paid. And it was admitted by the district court on the grounds that they weren't statements? Is that the idea? Right. So initially the government attempted to get an in through co-conspirator hearsay. I fought it. I fought it. I fought it. The court delayed, as courts often do, to the very end. And because the proof at trial was that Yuri Diaz did not know about the false billing until much, well, ever, but much after, at a minimum, the document was created, they couldn't prove that he was a co-conspirator and that it was in furtherance of the conspiracy. So the court rather than, well, the court presumably, well, explicitly did not admit it as a business record, but rather found that it was akin to a drug ledger and non-hearsay. Wasn't the real issue of that notebook that Chavez's nickname was in it? Well, Chavez's name was in it, but the damaging, so we felt that and advocated that Orlando Rodriguez was a very unreliable witness. He was really the one witness who had any suggestion that Ledinson knew that there were injections being given. And he is claiming, he testifies, that Ledinson participated with him in paying witnesses. And that's the only evidence that came in, his word. So what they used the notebook for was, look, the guy that was in here for the first week of the trial that disappeared, he wrote a notebook and he is, Orlando Rodriguez told you, look, all of these notes in this notebook are corroborating that patients were being paid. And it was damaging and we couldn't cross-examine on it. And, frankly, we thought it was wrong. It's just not true. That's not what the language in the notebook was suggesting. And it certainly didn't help that my guy's name, Popo, was in there, which was mentioned by the government. Okay. Thank you. Thank you. Good morning. May it please the Court. I'm Jay Gilbert representing the United States.  In the United States brief, it mentioned that nowhere does Chavez seem to challenge the convictions for health care fraud and conspiracy to commit health care fraud. Those were counts one and two of the second superseding indictment. In the reply brief, Mr. Chavez said in the first paragraph of his argument section that he's seeking reversal of the convictions on all counts, including health care fraud. He has not developed that argument, and so it's the opinion of the United States that that has been waived. It's not been developed. And if one takes a look back at the post-trial motions, Mr. Chavez filed two Rule 29 motions for acquittal, those being on count 13, the aggravated ID theft count, and count 16, the conspiracy to commit money laundering. But nowhere in the post-trial motions was there a Rule 29 motion regarding the health care fraud counts. And so to the extent that he's arguing insufficient evidence for the health care fraud counts, that's been waived since he didn't make a Rule 29 motion to that effect. The authority substantiating that argument is United States v. Dandy, 998 Fed 2nd 1344 at pages 1356-357. But not only did he not make the Rule 29 motions regarding the health care fraud counts, also in those Rule 29 motions and the memorandum supporting them, he concedes on several occasions that Chavez did commit health care fraud. And one of the quotations that I'd like to focus on right here is in his reply in support of his Rule 29 motion regarding aggravated ID theft, that's record number 438 at page ID number 4719, he says, quote, Chavez did not argue that the U.S. failed to prove Chavez committed health care fraud. At other parts in his appellate brief, he talks about any documents regarding Lytic therapy being unreliable because Lytic therapy itself was created to perpetrate fraud. And so it's hard for me to understand exactly what Mr. Chavez is or is not arguing, but I wanted to at least clarify for the court that it's the United States position that the health care fraud counts, one and two, are not at issue in this appeal. Before you get to the Lytic credentialing, can you explain what the government was trying to prove with the Diaz notebook? The Diaz notebook, the court found, was akin to a drug ledger, just numbers on a page. That notebook was identified at trial during the testimony of Mr. Rodriguez, who Mr. Meyer just referred to. Mr. Rodriguez was an employee of Jeff Boat and came in and met with Chavez initially and talked about UnitedHealthcare, insurability, and then Chavez referred Rodriguez to Les Cano. Chavez was actually present, the record shows, during the discussions that Les Cano had with Orlando, talking about recruiting patients to come in from Jeff Boat, who were insured by UnitedHealthcare, to come in and then these entities would bill UnitedHealthcare for injections never given. So your use of the Diaz notebook was to affirm Rodriguez's position? The real question is, was it used for a hearsay purpose? It was. If it wasn't, why not? Well, it was not a hearsay, it was numbers on a page. It was names. It made no, it was not admitted as... But those could be, 16 out of 20 was one of the numbers, that could be hearsay. It could be to prove that a patient showed up 16 out of 20 times. Right, so it could be. It can't be just that numbers on a page are never statements. Well, that's true, Your Honor, but it has to all be taken in context. Of course. And so that's what Judge Strange is asking. Explain the context that makes it not hearsay. Yes, Your Honor. During trial, Mr. Orlando said that he was present when he saw Yuri Diaz writing in this notebook. Orlando identified the notebook. And so, the notebook was seized during the execution of a search warrant, along with other documents regarding the false billings. And so... That sounds like it makes it authentic. I mean, maybe I'm wrong, but I've tried a lot of cases, and authenticity and hearsay are two different things. Right? Yes, Your Honor. So it's authentic. And so, why isn't 16 out of 20 hearsay? I don't think that it's in itself hearsay, Your Honor. It's that the notebook was admissible, and the jury was able to draw reasonable inferences from it. And I think taken in context of the evidence in the entirety, the jury could take a look at the Diaz notebook and see that Diaz was, in fact, part of this plan for false billing. I'm not sure that answers your question. And it could also say that Papo or Chavez was then being offered for the proof that Chavez was part of that conspiracy, right? They could draw that inference, Your Honor, reasonably. Now I'm confused. I took your answer to Judge Tappar to go to whether there's sufficient evidence. Well, when you're doing the sufficiency of the evidence inquiry, you look at all the evidence, whether it was admissible or not. You leave for analytical separateness, whether it's admissible or not, and then whether it's harmless or whatever. All right? Am I understanding your response to his question in that correctly? I mean, sure, you can say this helped prove that the person was guilty of the crime. But the question is, was it admissible? It's a different question from whether it contributes to sufficiency of the evidence. Yes, Your Honor. Does that make sense or not?  And I'm totally, I mean, 18637 is just five numbers, but if you then put a witness on the stand and he says, well, the way we talked, that means I got a new customer for our fraud scheme. All right? Would that then, and if you're admitting it for the purpose of showing that he did admit a new customer in my hypothetical, then I guess it's hearsay, isn't it? Because it's evidence that a witness is saying, says something, that you're trying to demonstrate. Now, if it says something that you're not trying to demonstrate, it says, you know, this is how many times, you know, this is what I bet on the races this morning, or something that's just not relevant, then maybe it wouldn't be hearsay, or it would not be hearsay. Your Honor, yes. It has to be submitted for the, what is the language? Truth of the matter. It has to be submitted for the truth of the matter. I'm trying to get at what your answer to that argument is. I feel confident you have an answer, but I haven't heard it yet. Instead you say, well, this contributed to a jury finding of guilt, but that's a different issue. I just want to know whether it's admissible or not. Yes, Your Honor. Well, the court found that it was akin to a drug ledger and was not hearsay. I understand. But his answer is, it was interpreted to say these things that were in the interest of the government to prove. There's some hearsay law that says that testimony regarding the meaning of codes isn't hearsay, or isn't intended to prove the matter asserted. Do you understand what I'm asking? I think I understand the court's question, Your Honor, yes. Well, the evidence was that D.I.s did write in this notebook. Mr. Orlando talked about the notebook and not only that, but the conspiracy overall. And so the jury did take it as evidence of the underlying fraud, yes. I think an argument could be... Something could be evidence of fraud and not be hearsay if it's, for instance, the actual item that was stolen or something like that. It isn't a statement, right? If you have a witness saying this says, then it becomes a statement, doesn't it? Yes, Your Honor, I understand the point. Did you care whether a patient showed up 16 out of 20 times versus 15 out of 20 times or just that they were recruiting patients and they were coming in? Did you care as to the truth or just that this occurred? Just that it occurred, Your Honor. It didn't really matter the number of times that it occurred. What you cared is to the truth that Papo's name was on it because that was part of the proof of the conspiracy, right? Part of it, yes, Your Honor. Can I ask a... Are we done with this? Can I ask a different question? You, in your brief at page 25, quote Wade v. Timmerman, Cooper, and Estelle. This is a jury instruction thing. And you say the only question is whether the absence of the limiting instruction so infected the entire trial that the resulting conviction violates due process. Now, I may be wrong, but this is a direct appeal, not a habeas case, right? Correct, Your Honor. So don't we always ask whether it was a harmful trial error regardless of whether or not it violates a constitutional right? In other words, if the instruction is erroneous, then we ask is it harmless. We don't ask does it violate a constitutional right. That only occurs on habeas. Your Honor, I understand your question, I believe. The jury instructions have to be taken as a whole. And you can't view any particular instruction in isolation. I totally agree with that. But we don't need to ask whether it violates due process, correct? Well, Your Honor, yes, I do think that is a question. Whether the jury instructions taken as a whole adequately set forth the defense's theory and otherwise provided a fair trial. Assume they didn't set forth the defense theory. Is that a due process violation or is that just a trial error? And if it's a trial error, are you saying we can't reverse if it's harmful to the defendant? Well, Your Honor, if it's harmful to the defendant, if I understand the court's question correctly, then it would have to be harmful to the extent that it violated his due process rights and created an unfair trial. And the United States' position is that these jury instructions, some of which, by the way, follow the Sixth Circuit pattern instructions, were correct and did provide a fair trial when read in their entirety and in context. Doesn't Estelle, have you read Estelle? I mean, you cite it, but you're quoting it. Estelle says those are two different things. Habeas and trials are two different things. And habeas, they have to violate due process. If it's a harmful trial error, it doesn't mean it has to rise to the level of due process for us to reverse. Do you have any case where we've ever held that in a non-habeas context? Not to my knowledge, Your Honor. Okay. That answers my question. Thank you. But regarding the leddick credentialing documents, it kind of goes toward, well, in fact, it does go toward the aggravated ID theft allegation, which was count 13 of the second superseding indictment. And Mr. Meyer indicates that Dr. Black had given his credentials to support credentialing packets for other clinics. In fact, the evidence at trial was that Dr. Black had given his ID to Betancourt to credential one particular clinic, that being MedCenter Chiropractic. Now, at trial, when Dr. Black saw this leddick credentialing packet, he said, I've never seen this before. I didn't authorize my ID to be used in credentialing this particular clinic. And it wasn't just Dr. Black's ID in the credentialing packet. It was also Mr. Chavez's driver's license containing his signature, along with some tax forms containing Mr. Chavez's signature. And so Mr. Chavez's argument that the United States never approved the source of the leddick credentialing documents doesn't seem to hold water because the jury could have reasonably inferred, given all the contents of that leddick credentialing document, that either Chavez, with these documents bearing his signature as well as Dr. Black's, or one of the co-conspirators submitted this to UnitedHealthcare so the clinics could get paid for the injections never given. Of course, the argument is that Les Cano did that without permission or knowledge of Chavez, right? That's my understanding of what Mr. Chavez is asserting. He's asserting he never submitted it directly, but the United States didn't have to prove that he submitted it directly. Mr. Les Cano was part of the conspiracy, and the district court did not accept the argument that Les Cano was the mastermind and that Chavez was just a puppet in this entire thing. Your time's up. Would you like to summarize? Well, in summary, Your Honor, yes. The evidence was admitted properly. The evidence was sufficient to support the convictions here. The trial was fair. The instructions adequately and correctly set forth the law and the theory of the case, and the United States respectfully requests that this court affirm the judgment. Thank you. Thank you. Just to rebut a few of the points that were made and to clarify, we did not move and are not asking this court to reverse for insufficiency of evidence on the health care fraud. We are asking the court to reverse for a new trial because of the introduction of the Lettick therapy document, which was the only evidence that connected Lentz and Chavez in any way with billing because of the Uri Diaz document, which was introduced. I would suggest the only reason it was introduced was for the truth of the matter asserted, and that was the only evidence that corroborated Orlando Rodriguez's testimony. Just because it's corroborated doesn't mean it's hearsay. Correct, but the reason my use of the word corroborated is to get to the argument that it's not harmless. So it was hearsay. It was only used for the truth of the matter asserted, and it's not. I agree with the court's analysis. The issue is for instructions for evidentiary rulings, is there an error and was that error harmless? And the court mentioned the defense instruction, and we raised this in the brief in relationship to our arguments about the instruction. I'm sorry to interrupt you. You're not raising a due process violation. And last I checked, if it was due process, the instructions don't have to violate your due process rights to be harmful, correct? We're arguing they violated the law and that law wasn't harmless. The error wasn't harmless. That's correct. The two instruction points that is contained in the brief but is troubling as a defense lawyer, we asked for a defense theory instruction. My proposed defense instruction was our theory is the government has not proved beyond a reasonable doubt that Ledin and Chavez knew that there was fraudulent billing. The court refused to give that and would only give an instruction that said, Ledin's and Chavez's defense theory is that he did not know that there was billing. You didn't appeal that, though. I didn't list it as a separate, but I utilized it as a reason that the recitation of the indictment and the government's theory of the case was harmful. And then finally, when we're on the notion of instructions, I do want to note that the instruction that omitted the advanced knowledge requirement from Rosemond, it's true that was a pattern instruction that was used by the court, but it was also the exact same pattern instruction language that was used in Henry in the 924C context, which this court found was plainly erroneous, by omitting the requirement that Rosemond has created in compound crimes that there be advanced knowledge of the elements. Can I ask a question? In the aggravated identity theft instruction, though, you agreed that when it refers to the crime, it's the crime of aggravated identity theft, correct? In fact, it's specific. There is, in the instruction, the lower case C crime is referenced as the aggravated identity theft. But if you look at the language that the government relied on, which is intend to commit the crime, which was identical language in Henry. But in Henry, it was referring to the underlying crime. In Henry, the aiding and abetting instruction in Henry was a generic instruction that referred to all of the crimes. But here it says the crime of aggravated identity theft. It does say, in the instruction, it says the crime of aggravated identity theft, but the jury could conclude that the, quote, intent, with the intent that the crime be committed, could include, for example, intending that health care fraud was committed. It doesn't say intent that the entire crime be committed, help with every aspect of the crime. It says, first, that the crime of aggravated identity theft was committed. Second, that the defendant helped to commit the crime or encouraged someone else. Right. It's referring to the aggravated identity theft. Correct. But that language was in Rosemont. Right. But in Rosemont, they were referring to the predicate crime. I don't think so. I think in Rosemont, this language, well, in Henry, that is the pattern instruction language. So presumably, now I don't have the Rosemont instructions, but presumably there was language similar to that. And I don't think that the issue in Rosemont was that it explicitly limited the crime that had to be assisted to only the underlying crime. I think it was more, it was unclear. And as the Sixth Circuit has held since the early 70s, when you're talking about intent, it needs to be specified with, you know, detail in the instructions. Thank you. Thank you both for your arguments. The case will be taken under advisement and an opinion issued in due course. You may call the next case. Oh, you are CJA? We appreciate your service. It was a good argument and a good brief, and it helps both the court and the parties when you give your time to do that. So thank you so much. Thank you.